Our first case today is 2016-1306, Technology Properties Limited versus Huawei Technologies. Okay, Mr. Cecil. Good morning, Your Honors, and may it please the Court, even if you push aside how problematic it would be to find that an alleged surrender is clear and unmistakable when every court who construed a surrender construed it differently, the district's court construction should still be reversed. Is it a question of fact whether Magyar's clock generator could be considered an oscillator? No, Your Honor, because it's contained entirely within the intrinsic record. There's no extrinsic evidence that's considered. The prosecution history is limited to the comments of the applicant and the materials that are before the court, and so we're just looking at the intrinsic record, and this court has held that looking only at the intrinsic evidence is just a matter of finding a loss. It's not a finding of fact, and we're still within a realm of de novo review. Huawei claims that you did not claim that the Magyar clock generator was not part of an oscillator during prosecution history, and instead that the clock generator oscillator comprised off-chip and on-chip components through the two pins. Is that an accurate reflection of the Magyar oscillator? I don't believe that it is. I believe that the Magyar oscillator, the clock gen circuitry, is not an entire oscillator, and we actually have an agreed definition of what an oscillator is. It's a circuit capable of maintaining alternating output, and we're consistent in the prosecution history. Actually, we came back and we sort of, I would say, double-clarified this at 8-21-01. We made sure that we were clear, and we said applicants' prior comments did not make clear the distinction between an oscillator and a clock as it applies to the Magyar reference. As a self-contained on-chip circuit, Magyar's clock gen is distinguished from an oscillator in at least that it lacks the crystal or external generator it requires. So the clock gen circuitry in Magyar is not an entire oscillator, and that's the issue. There's no entire oscillator on-chip in Magyar. Okay, so let me just tell you what I think about this case and what I think your problem is, and then you can tell me why you can somehow get around this problem. What I think about this, this is going to be a long-winded question, so just get comfy. So what I think about this question, about this case, is what your client involved, invented, was variability, a variable signal, frequency signal, going into the CPU, and that variability was by virtue of putting the oscillator on the chip such that it varied with temperature or conditions that affected the substrate generally. That's what he invented. That's what he sought to invent. That's what he invented and showed in his pictures. And that's why he isn't like Magmar. The problem is then you have this infringing device, and the infringing device comes along and it has a crystal-generated frequency off-chip that's then fed into control circuitry and then fed further into the inverted ring oscillator, which causes it to become variable before it goes into the CPU. Do you disagree with my factual assertions thus far? It's that last part that I just want to make sure that I understand. So there's an off-chip frequency generated. Sure, let's look at your picture in your brief, which demonstrates how the accused device works. Let's see what page it is. It's pretty straightforward. Page 21 of your brief. A simple diagram that shows the arrangement of the accused, right? Isn't this what you think the accused device is? On page 21, Your Honor? Yeah, of your brief. That picture. That's right. That's a picture of what we believe the accused device looks like. Which has a crystal clock external to the chip, creating the initial frequency that is fed into control circuitry, which just amplifies it, honestly. That's all it does is change it from 50 Hz to 200 Hz or whatever. That's all that control circuitry does. Then it sends it over into the ring oscillator. You've got a ring oscillator on-chip, which changes what was a fixed frequency signal up until that point. Even out of the control circuitry, it was still a fixed frequency signal. Now suddenly, because it goes through the ring oscillator, it has morphed the signal into a variable signal. You have a variable frequency signal now going into the CPU. I don't think that's a fully accurate description of what the invention is. I didn't describe what the invention is. I described what the accused device does. Or what the accused device does. When that signal comes in from the quartz crystal, it feeds into the PLL control circuit. Coming out of that is not some sort of 200 MHz signal or 2 GHz signal. What's coming out of that is some control signal, which then allows the ring oscillator to adjust. But it's still a fixed signal. What's coming out of there is still a fixed signal. There is no variability introduced until it gets into the ring oscillator. It's actually an output of a comparator, so it will change based on what's happening. You're not listening. It's still fixed. It's not variable. When you say it will change based on what's happening, not what's happening with the substrate. It's a control signal, which simply operates to change it from whatever number frequency it came in at to a different number of frequency when it goes out. But it's still fixed, unlike a ring oscillator. I think we'd probably end up disagreeing about infringement, but I don't think that it's actually necessarily what's at issue. I think the ring oscillator still has variability within it, and that's what we're saying matters. So the entire oscillator, the entire circuit. But what you say is the ring oscillator, which is on-chip, creates a variable frequency, which is then going to be fed into the CPU, and you think that's the crux of what your client invented, correct? And that would be different from MAGAR, clearly. Yes, Your Honor. But the problem is, and this is the problem for you as far as I'm concerned, is that your prosecution history, you clearly and unequivocally over-disclaimed. You didn't need to disclaim as much as you did, but you didn't anticipate their infringing configuration. You were looking only at MAGAR, and then you were looking at your device. And the sort of death knell for me of the prosecution history is a single sentence on page 2103. The MAGAR teaching is well-known in the art as a conventional crystal-controlled oscillator. It is specifically distinguished from the instant case in that it is both fixed-frequency, being crystal-based, that's the variability versus fixed-frequency argument that you make throughout, and requires external crystal or external frequency generator. Well, whatever your disclaimer is, precisely, it seems to read directly, at least, on the infringing device in this case, which, while is not fixed-frequency, is nonetheless using an external frequency generator in the form of the crystal. So whatever your disclaimer is, it's got two components, and this is the sentence in which you sum up all the arguments made across two different times when you described how you differ from MAGAR. If I may attack this particular statement head-on, Your Honor. So when I see this, the MAGAR teaching is well-known in that it's a conventional controlled crystal oscillator, and that it is specifically distinguished in that it's both fixed-frequency, so that's the varying limitation that's within the claim. I know, and they have variability, so that's not a problem for you, for infringement. And then it requires an external crystal, so it requires something that does not allow the MAGAR system to be the entire oscillator on the chip. Remember that in conjunction with this particular argument, there's an amendment made that says entire oscillator, we add the word entire, and this is noting that the complete ability to maintain an alternating output must be on the chip, and so that's different from the MAGAR situation, because in MAGAR, they absolutely must have that off-chip crystal in order to get an alternating output. But do you see Judge Moore's question, or the rest of her question, that it looks like we can read this prosecution history pretty plainly as saying we're looking at an onboard oscillator whose frequency is not fixed and does not rely on an external crystal or external frequency generator, period. What's wrong with that reading of this sentence? I think that's actually a different reading than what the court came up with as a construction. But I'm asking you, what's wrong with my reading of this sentence? Which is shared by me. Would Your Honor's mind, I don't want to agree to a construction that I didn't hear exactly clearly, would you mind just repeating that one more time? Okay, again, this key sentence on JA2103, why isn't the logical reading that your onboard oscillator has a frequency that's not fixed and does not rely on an external crystal or external frequency generator? So I think the question is, what does it mean that it's not fixed? No, we don't actually think that. I don't personally think that's a question. I don't have a problem with you on that. My problem is that you went further. You didn't stop and put a period there. You decided to where there, and a separate requirement, and a separate requirement of our system is it doesn't require an external crystal. This one does. I think that there's also a reading here, and to answer your question, Judge Chen, is that there's also a reading here that when you read the sentence in conjunction with the entire prosecution history, what you understand is that the external crystal or the external frequency generator is required to generate the signal. So what you're arguing is that in context, it's ambiguous. Absolutely, Judge Wallach, and I think that's consistent with some of this court's recent decisions. I think, for example, the MIT versus Shire decision that came out just a couple months ago, the court here indicated that. So what's the sentence then in your estimation in the prosecution history that sort of defeats the apparent unambiguity or non-ambiguity of this sentence on JA-2103? I think on JA-2101, we say McGar's clock generator relies on an external crystal connected to terminals X1 and X2 to oscillate. So what that does is it mentions that the external crystal or the external frequency generator is required to generate a signal that's used by the oscillator. So there's more to it than just the fact that it can't have an external crystal or an external frequency generator. There's a purpose restriction that's assumed. I guess you're saying McGar is relying on an external crystal or external frequency generator. And then you're saying that, well, your claim is different because it doesn't rely on any kind of external crystal or external frequency generator. I guess I'm not seeing the ambiguity. We're saying that it doesn't rely on it and it doesn't use it to generate the signal that's used by the CPU. The signal that's used by the CPU is generated by an on-chip oscillator that's entirely contained on the CPU. And it does not require or does not rely on that external crystal to generate the signal. I can see that I'm into my rebuttal. So would you agree that to the extent that we've had this discussion, technology properties has disclaimed the use of an external crystal to cause clock signal oscillation? To cause clock signal oscillation, I think that we would feel that to the extent that means you're not generating the signal from that external crystal, yes, we would agree. If I might save the rest of my time for a rebuttal. Of course. No problem. Don't worry. We'll restore your full time. I asked you a lot of long-winded questions, so I ate up some of your time. Don't worry about it. All right. Let's hear from opposing counsel, Mr. Fowler. Thank you, Your Honor. If it may please the court, I'd like to pick up with the first question that was asked of counsel about what the oscillator is in MAG-R. So that's determined not by looking at MAG-R. The court's precedent says you don't go back in hindsight and look at the prior art. Since we're in disclaimer land, the issue is what did the applicant say MAG-R said? That's very clear. In the February 1998 amendment at Appendix 2101, they started by saying MAG-R's clock generator relies on an external crystal connected to terminals X1 and X2 to oscillate. So the clock gen is oscillating. The signal is coming from the crystal, and together those are forming one oscillator. They then say on the next page at Appendix 2102, the clock gen part of the oscillator circuit is clearly on the IC, but not the crystal. So again, they're talking about two parts making up one oscillator. And then on the next, or actually on the same page, 2102 again, they say, thus, while most of MAG-R's clock generator circuitry is on the IC, the entire oscillator, which because it requires an internal crystal, is not. And they had made the same distinction earlier in the July 1997 amendment at Appendix 2093, when they were contrasting Edwards, which is another prior art, where the oscillator there was the crystal and the circuitry off chip. And they're contrasting that with MAG-R and their MAG-R, because MAG-R had distributed oscillator circuitry. On page 20 of your red brief, you say that the, quote, mere fact that different tribunals chose different wording to capture the appellant's disclaimers is no, quote, no barrier to the existence of a clear and unmistakable disclaimer. But you don't cite any authority for that. You got some? Well, no, there's no authority in the sense that this is a unique case in the sense that I'm not aware of any cases, Your Honor, where there has been such complete disclaimer in multiple amendments and multiple times within amendments. Wait, wait, wait, wait, wait, wait. There are some district courts that disagree with you on its completeness. With respect to the federal circuit, with respect to the federal circuit law. In this case, we have a situation where the applicants disclaimed over multiple amendments, sometimes within the same amendment, several times, choosing to use somewhat different words each time. But the substance is the same. And as the district court here found that the, using the district court's words, the ultimate prime of claim construction in this kind of circumstance is to accurately capture what actually happened in the patent office. And so in this case, unlike maybe one other case where Your Honors might be faced with a single sentence. What happened when it was clearly a disclaimer as opposed to ambiguities? Well, Your Honor, our position is it's not ambiguous at all. It's very clear that they disclaimed. And if you look at all of the court rulings, the Eastern District of Texas, the HTC case, the administrative law judge in the ITC, the commission in the ITC, and in this present case, what's common about all of them? All of them found disclaimer. All of them found disclaimer of the use of an external crystal. And all of them found disclaimer of the control signal. The only difference is that in this case, the district court dove down a little deeper and looked at the exact words that were used and found that the disclaimer, issued a disclaimer construction that was closely mapping to what was actually disclaimed, which in the case of Magar was the use of an external crystal to control the oscillator. That's what repeatedly was said. They said that three times in the February 1998 amendment. And they used those words to the same effect three times in the July 1997 amendment. So I guess what we have here are different wordings. So just to pick up on Judge Wallach's question, you would think if it's such a clear and articulated, the exact same disclaimer. And yet they didn't. There's some variety in the language they use. And what I'm trying to figure out is, does the variety of the language suggest maybe there's some lack of clarity around the edges of what the scope of the disclaimer is? But then there's a core disclaimer in the middle that's very, very clear and unmistakable. And so can you, if that's the case, and I think that's probably what your argument ought to be, to the extent that there's undoubtedly varying language being used by all these tribunals, can you identify what's the consistent thread that goes through all the different tribunals disclaimers? What are those key elements that you can say without a doubt is very, very consistent with what they've all said? Well, Your Honor, again, what's common amongst all of them is two things. With respect to MAGAR, it's the disclaimer of the use of an external crystal. That's common to all. And with respect to sheets, it's the use of the control signal. To some extent, your opposing counsel agreed with you. Well, they said there was no disclaimer at all, at least initially for both. And then they rapidly backpedaled for that. We're talking about oral argument. But the disclaimer, I mean, what ultimately governs here with all due respect to the other decisions of the district court is not what those constructions were. None of those constructions came up to this court for review. And so what we're looking at is what was the actual language used by the applicants? And with respect to MAGAR, I won't repeat the quote from 2103. We already heard that, where it was specifically distinguished as being both fixed frequency being crystal-based. So that's a crystal fixing the frequency. That's what the judge here did, the district court. And external. So the court's construction of whose frequency is not fixed by any external crystal captures both aspects of that. That was lacking in some, but not all of the other decisions. But assuming that your infringing device operates, to some extent, the way it is drawn on page 21 of the blue brief, and since there's a stipulation of infringement, I don't really know how your device operates. So I'm not so concerned with it. Assuming it does, I guess, why did they argue that, why did they stipulate to infringement? Why didn't they say there is an entire oscillator on chip, the ring oscillator is on chip, and it's feeding a variable frequency into the CPU, and that's enough? My question is, why did they stipulate to infringement? Why didn't they just say there's two oscillators here? You've got a crystal that's issuing a fixed frequency signal, and then you've got an entire oscillator, the ring oscillator, on chip. And that's all we need to have to avoid the disclaimer. Well, Your Honor, of course, I can't peer into their thought process. But what I can tell you is that both aspects of the construction require finding a non-infringement. And I think they quickly recognized that. I'm speculating because I don't know what's going on in their minds. But in the accused devices, you have a crystal that's generating a fixed frequency that is, in fact, controlling the frequency of the oscillator. And there's a bunch of evidence in that. It's not before you, Your Honor. It's controlling the frequency of that oscillator, which is an oscillator into itself. But then you've got the ring oscillator, which is affecting the frequency. And the claim just requires an entire oscillator. It doesn't prevent there being multiple oscillators. I mean, this appears to me to be a two-oscillator system. Am I wrong? Well, Your Honor, in the accused devices, there is a frequency coming out of the crystal that's fixing the frequency of that ring oscillator. That's the evidence that's, unfortunately, not before the court. What do you mean it's fixing the frequency of the ring? It determines the frequency. Now, there's control signals. Wait a minute. It determines the frequency in much the same way as if you apply voltage to a crystal. It determines the frequency. It's just the input signal. And the input signal is fixed, right? Isn't that all you mean? Well, to a certain extent. But then you have the other part of the construction, which is sheets, which is there's a control signal that can then vary. That's a separate issue. These are, as you just said, two separate infringement issues. I'm trying to understand why they stipulated to infringement on this construction. Like, what is it about this disclaimer that you think renders your... Because, I mean, if your entire case hinges on control signal, we'll move to that. But I thought that there was some stipulation of infringement that under the first part of the alternatives, you can't have this or this, that they seem to have stipulated to non-infringement. And I can't quite understand why. Your Honor, again, I can't peer into their minds. But what I can tell you is before this case, the district court case, these same parties were involved in the International Trade Commission that resulted in a decision of no infringement. And as you may recall in that instance, what happened is the initial claim construction was somewhat similar to what issued in the Eastern District of Texas. But it quickly became an issue in that case as to whether the more general statement about the use of an external crystal or clock generator to generate a circuit encompassed fixing the frequency with a crystal. And the administrative law judge quickly came to the initial determination that, in fact, those are part and parcel, that you can't generate a clock signal without fixing the frequency. It's like a metronome. One is going to happen without the other. The commission upheld that and found that there was disclaimer along the same lines as what the district court did here. So there's no substantive difference. And that was the basis of the non-infringement finding. Because in that case, on that record, with that evidence, there was a finding that, in fact, the external crystal fixed the frequency of the onboard clock and that there were control signals as well. So on that record, in that case, they lost on both. The facts haven't changed. The record's not before you in terms of the accused evidence. I suspect, again, that they stipulated because they realized they couldn't survive under either of the prongs. So just so I understand, if hypothetically we were to affirm on either of the two disclaimers found by Judge Craywell, either the one with respect to MAGAR or the one with respect to sheets, then this is an affirm? We believe so, Your Honor. But I guess that's what I'm trying to figure out. They stipulated because of disclaimer one or disclaimer number two? Or they stipulated because both together ultimately renders the accused products non-infringing? They never said in the district court. They've never said in their briefs. What I know is they've challenged both prongs. And I think there's a good reason for that. It's like in the international trade commission. Under either prong, they lose. And they haven't articulated to this court any reason why they would be able to survive an infringement finding under either prong. So we would say affirm without remand. Well, I mean, you would say that. But this is based on a stipulation. Yes, Your Honor. I mean, it'd be one thing if the judge held summary judgment on two independent grounds, that if we affirm one of those two grounds, the case is over, and we don't have to reach the other one. But I don't know what to do with this in the form of a stipulation. So why don't you tell me why you think the very, very broad disclaimer related to that does not require a control signal, why don't you point me to what you think is your very, very best prosecution history statement that they made that supports a broad thing that says does not require a control signal. Not does not require a control signal to do a particular thing, but doesn't require a control signal. It's a really broad statement. So where is it you think? So, Your Honor, I would say that it's the culmination of all three things we point to. I need to know specific pages and specific sentences and specific statements they made. Sure. So at appendix 2117 in the April 1996 amendment, they said the present invention does not similarly rely upon the provision of frequency control information to an external clock. 2117. Don't worry about your time. Don't rush me. The present invention does not similarly rely... Okay, to an external clock, right? Okay, let's get to that. And then they go on in that same page to talk about it obviates the need for the provision of the type of frequency control information described in sheets. And later on that same... 2127. I'm sorry? 2117. 2117. Just give us a chance. Sure, I'm sorry. Should I proceed? Yes. They go on on that same page to say sheet system for providing clock control signals to an external clock is thus deemed to be unrelated to the integral microprocessor system of the present invention. So here in the first part, they're using both the phrase frequency control information and the phrase clock control signals to describe the same thing. And as Your Honor correctly pointed out, at this point, they're talking about sending something externally. But what happened is there was a rejection nevertheless, and there was a disagreement between the examiner and the applicants as to whether in sheets, the CPU and the clock were on the same circuit. So in response to that, what they said in the next amendment, which is the January 1997 amendment at 2127 of the appendix, they said, even if the examiner is correct, the variable clock in sheets is in the same circuit as the microprocessor system 100, that still does not give the claimed subject matter. In sheets, a command input is required to change this clock speed. And they go on later. I don't know where you are right now. I'm sorry. I'd really like to be able to follow you. Sure. I apologize. 2127. 2127. Yes. If I misspoke, I apologize. No. 2127, top of the page, bottom of the page. Where are you? It's near the bottom. I'd say the bottom third, about maybe eight or nine lines up from the bottom where it starts in the middle of the paragraph, even if. OK. So again, the context here is there was a disagreement. And Your Honor, I see I'm running out of time. Should I continue? No, no. I told you. Don't worry about your time. OK. So they said, even if the examiner is correct that the variable clock in sheets is not the same circuit as the microprocessor of 100, that still does not give the claimed subject matter. In sheets, a command input is required to change the clock. And then a little further below, it says, no command input is necessary to change the clock frequency. Where did they disclaim control signals generally? Well, what happened here, and this goes to what the district court did, is the district court looked at the language that was used both in the two excerpts I read and then also the excerpt that's- Because Judge Wallach's question, you realize, sort of hits the nail on the head, which is this says, no command input is necessary to change the clock frequency. That's a very narrow little disclaimer. That's not no control signal, no control signal. Sure. So I would say two things. One is frequency control information, clock control signals, command input, manual or programmed inputs. Those are the things that are used in the three amendments. All of those things together equate to clock signals. Appellants have not identified any space between control signals and those four things. In other words, they haven't identified a signal that wouldn't be one of those four things that's not also a control signal. To answer your more specific question, the context of the claim construction order makes it clear, even though it may not be in the words themselves of the construction, that the control signal is used to control the frequency of the clock. That's what Judge Graywall said. That's what Judge Graywall meant his disclaimer to be limited to, even though he wrote it broader? I believe so, Your Honor. If you look at pages 10 and 11 of the appendix, that's what he's talking about. Vis-a-vis your device. Since, again, we have a stipulation here, I don't have all the information I need to be able to understand how your device operates to figure out whether this linguistic... Clearly, I believe there is a disclaimer here. The question is, I personally think Graywall's disclaimer is broader than is otherwise appropriate. I think it should be limited to a command signal to change clock speed. That's what they can't have, command signal to change clock speed. So the question is, does that affect anything? I don't believe so, Your Honor. I believe that there should be an affirmance without... I know, but if they stand up and say it does because there's a stipulation, you realize I got to send you back, whether you're right or you're wrong, because I don't have all the data on how you operate. Let me just point you to one thing, Your Honor, perhaps that will help. If you look at page 20 of Appellant's opening brief under heading E, this is page 20, where they describe what they think the accused products. We don't necessarily agree with every word that they have in here, but if you go down six lines into that paragraph, it talks. It says, this oscillator, referring to the accused devices, is not a free-running oscillator as described in column 17 of the 336 patent, however. And it goes on to say, PLL control circuitry is attached to the oscillator. This control circuitry serves two purposes. First, when desired, it maintains the clock signal at a relatively fixed frequency. It also can be programmed to cause the ring oscillator to generate a faster or slower clock signal, e.g., a program executing on the CPU can cause the frequency of the clock signal to increase or decrease as needed. So I take it from here, I think it's fairly clear, that they're conceding the fact that this control circuitry, which is what the control signals would emanate from, fixes the speed of the clock, or at least impacts the speed of the clock. And as a result, there doesn't seem to be a disagreement on this point before this court. So we would say that there would be no remand necessary if there was that adjustment to the court's claim construction, which we think was intended by the court in any respect. When you think, when they are talking about a clock, or maintaining the clock signal at a relatively fixed frequency, do you think they're referring to the ring oscillator? Yes, Your Honor. That's one of the reasons why they lost in front of the International Trade Commission is that there were signals that were controlling this. And just to step back to where the panel began with their discussion with appellants, the invention is a variable clock that varies according to operational characteristics or process characteristics. That's not what's happening with these devices. These things are being controlled by control signals that are on the chip and by a fixed frequency crystal off. There's no variability based upon operational characteristics or process characteristics. They're two completely different things. So, Your Honor, I'm way over my time. Oh, thank you. You helped us understand this better. So I appreciate it. OK, you have some rebuttal time, Mr. Cecil. Give him three minutes. If I could, there were two questions, Your Honor, that I thought came up that I'd like to address quickly. And there might be one more that you all have for me. First, there was a question about what was common among the various disclaimers or what disclaimers could be cleared. And Counsel for Appellees said that there was always a disclaimer of a control signal. And as Your Honor noticed, that there are specific types of control signals that there's an issue of disclaimer around. It's not broad control signals. But also, he mentioned- So wait, so if I were to limit the disclaimer to a command signal to change clock speed and say, that's all you disclaimed, are you saying then the stipulation is no longer binding because- I mean, don't be technical and say, you know, just because if I change a single word of a term, even if everybody agrees on how the device operates. Tell me there's- if you're going to tell me I have to remand, tell me there's a reason that that change materially is different because of the way the accused device operates. So the issue is whether you say it's required to change the frequency. If a control signal was required, then we think that we're- we still have a successful infringement case because there's variability within the ring oscillator. And so it's not necessary to have a control signal to change frequency. So that's why we feel that there's still a viable infringement case if you were to change that construction. What if it was- does not rely on a command signal or does not rely on an input to change the oscillator's frequency? Does not rely on a command signal to- I believe that we would still feel that that's a viable infringement case, Your Honor. Although- It seems to me you disclaim command input, not control signals. We agree with that, Your Honor. It is- we were very specific with what we said with respect to command signals. And I think other courts recognize that. Similarly, I think that other courts, when they were talking about McGar, each one of the prior constructions talked about how the external crystal was used to generate. And this particular instance, we're a little bit different. And this goes back to Judge Moore's question. And, you know, you said, well, what's wrong with the current construction? Why did they say that, you know, there's an issue when you're fixed by an external crystal? That's the difference here. Now we're talking about having our processor's frequency being fixed by an external crystal, which means that it can't be adjusted or regulated by an external crystal. And that's an issue for us because there is some adjustment or regulation that goes on as a result of the external crystal. In the prior constructions that we were facing, each time there was a discussion of an external crystal, it was used to generate a clock signal, or it was used to generate the signal used to clock a CPU. Or, again, in the Eastern District of Texas, it was an external crystal clock generator. The problem is, I feel like the disclaimer that you said is undoubtedly broader than the disclaimer than you needed to say. But nonetheless, our law is really clear. It's what you tell an ordinarily skilled artist. It's not what I think you needed. It's not like, oh, well, let me only have them give up what I think they needed to give up. I agree with you. You did not need to give up what has been interpreted you having given up. But I'm not sure I agree with you that you didn't nonetheless give it up. So it's still that 2103. 2103 doesn't say requires an external crystal to fix the signal going into the clock or going into the CPU or whatever. You make a much broader statement. You say, we're not fixed frequency, and we don't require an external crystal, full stop. You say two things. We're not fixed frequency, and we don't require an external crystal. You didn't need to. You definitely didn't need to. You're right about everything you say about how you operate and how Magmar, what Magmar discloses. And in other points in the spec, you don't go as far. I mean, in the prosecution history, you have a lot of variability about what you say. But here is your culmination of why you're distinct from Magmar, MagR. And Your Honor, that leads me back to the point that because the prosecution history is an ongoing conversation between the applicant and the patent office, if you take that- Do you know how many times I have a lot of people come in, and they say a bunch of confusing stuff, and they stand at the podium? And then at the end, they realize that I don't get what they're saying. They say, OK, let me be clear, Your Honor. Let me sum it all up for you. That's what you did here. So how do I say, OK, well, I'm not going to hold you to the sum it all up sentence. I'm going to dig through the confusing stuff from beforehand. I think every so often when you make those summary statements, Your Honor, you're going to abstract a few things, necessarily, because I can't get into the detail of what I say. The prosecution disclaimer that any court finds has to be true to what the applicant said. And in many points, they're going to be very detailed as to what they say. But at the end, they're going to make some kind of summary statement, which encapsulates- Well, hopefully this is a lesson to future prosecutors, isn't it? Because whether you win or lose, you got raked over the coals, and your client paid a lot of money because of really broad, unbounded statements in prosecution history that were made by some attorney along the way that wasn't you, thank goodness, right? I'm glad it wasn't me, Your Honor. All right. Well, if you have anything else, I don't want you to end. I feel like I just made you end on a really bad note. So do you want to have a last sentence? Your Honor, regardless of whatever you do find, we do think- Sum it up broadly. We do think that a careful inspection of the district court's construction will show that what the district court found is much broader than what was actually said by the applicant. We did not say that the frequency was not fixed by an external crystal, and we did not disclaim all control signals. OK. Just to confirm, if somehow there was an adjustment in the disclaimer that proclaims that at least part of the disclaimer is an oscillator whose frequency does not rely on an external crystal or external clock generator as an input, would you still say that we need to remand? I think if it did not rely on it, I think we would still feel that there's a need to remand. OK. It would rely. I think it allows us to maintain an infringement case. OK. I thank both counsel for the argument, and I appreciate you being willing to answer my long-winded questions. Thank you for helping me understand the technology.